WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brown & Bain, P.A., an Arizona professional association,<br><br>Plaintiff,<br><br>vs.<br><br>John M. O'Quinn, an individual; John M. O'Quinn & Associates L.L.P., a Texas limited liability partnership; John M. O'Quinn, P.C., a Texas professional corporation; John M. O'Quinn Law Firm, PLLC, a Texas limited liability company; O'Quinn, Kerensky & McAninch; and Jane Doe O'Quinn,<br><br>Defendants. | No. 03-0923-PHX-ROS<br><br>**OPINION AND ORDER** |

Pending before the Court are Plaintiff Brown & Bain's Motion for Partial Summary Judgment and two Motions to Strike. (Doc. 107, 108, 141) In the summary judgment motion, Brown & Bain argues it is entitled to additional compensation for legal work performed between 1993 and 1998. Defendants, the O'Quinn lawyers (hereinafter "O'Quinn"), respond that Brown & Bain has already recovered all the fees to which it is entitled. In the first motion to strike, Brown & Bain argues that the opinions of two experts should be excluded due to the experts relying on inappropriate methodologies to reach their conclusions. In the second motion to strike, Brown & Bain argues that a witness is

unqualified to testify regarding the negotiation of the parties' agreement. For the following reasons, the Court will grant Brown & Bain's motion for summary judgment and deny the motions to strike as moot.

## BACKGROUND

Brown & Bain assisted O'Quinn in representing numerous plaintiffs in an environmental mass action captioned <u>McIntire v. Motorola</u>, 91-2067-PHX-PGR.[1] Brown & Bain's relationship with O'Quinn was memorialized in an engagement letter. The letter set forth the parties' agreement regarding case staffing, fees, costs, additional clients, and billings. A representative of O'Quinn "accepted and approved" the letter.[2] Because the portion of the letter regarding fees is the focus of the current motion, that portion will be quoted at length.

According to the letter, Brown & Bain's bills to O'Quinn "during the pendency of the action will be the product of the hours worked multiplied by $135 for the attorneys' time and the product of the hours worked multiplied by $45 for paralegal time." These payments were referred to as the "discount rate payments." The letter goes on to provide that "[a]t the termination of the action (whether by trial or settlement), Brown & Bain will be entitled to an additional payment of $155.25 for each attorney hour previously billed and an additional payment of $51.75 for each paralegal hour previously billed (the 'additional payments')." Brown & Bain would not be entitled to these additional payments "until an amount equal to the discount rate payments previously paid to [Brown & Bain] are recovered by [O'Quinn] and the other plaintiffs' counsel working on the matter (in the aggregate) from the proceeds of the litigation." After O'Quinn and the other plaintiffs' counsel "recovered an amount equal to the discount rate payments (exclusive of costs reimbursement, which are to come from

---

[1] The complete background of the litigation is set forth in a previous summary judgment order. (Doc. 57) In this order, the Court will provide only a summary of the major events with special emphasis on the facts relevant to the pending motions.

[2] Robert Hinton signed the letter on behalf of O'Quinn. Mr. Hinton is now deceased.

plaintiffs' share of the recovery)," the remainder of the recovery was to be divided one-half to O'Quinn and one-half to Brown & Bain until Brown & Bain's additional payments had been fully paid. O'Quinn was entitled to "[a]ny recovery remaining after payment of Brown & Bain's discount rate and additional payments."

In short, this agreement provided that Brown & Bain would be paid during the course of the action and, once the action ended, Brown & Bain would be entitled to further fees if O'Quinn recovered more than what Brown & Bain had already been paid. Pursuant to the terms of their agreement, O'Quinn paid Brown & Bain just over 2.9 million dollars during the course of the litigation. Thus, if O'Quinn recovered more than 2.9 million, O'Quinn was obligated to make the "additional payments" contemplated in the letter. Brown & Bain withdrew from the McIntire v. Motorola litigation while it was still pending due to a conflict with O'Quinn involving case management. The case eventually settled. Motorola paid $25,151,921.39 to settle the personal injury elements of the lawsuit and $1,150,000.00 to settle the property damage elements, for a total settlement of $26,301,921.39. From this amount the McIntire plaintiffs were assessed $13,727,597.66 in costs and received $2,467,335.12, leaving $10,106,988.61 remaining. It is the characterization of this ten million dollars that must be determined. Brown & Bain alleges that the ten million is a "recovery" as that term is used in the engagement letter. This characterization would allow Brown & Bain to recover its "additional payments." O'Quinn counters that it incurred over thirteen million dollars in unreimbursed costs in addition to the thirteen million assessed against plaintiffs, for a total amount of over twenty-six million dollars in costs. The thirteen million in costs not paid by the McIntire plaintiffs, according to O'Quinn, should be deducted from the ten million, leaving a net loss, and no "recovery" under the letter. If no "recovery" occurred, O'Quinn's obligation regarding the "additional payments" to Brown & Bain was never triggered.

In an earlier ruling on a Motion for Summary Judgment and a Cross-Motion for Summary Judgment, Judge Susan Bolton decided a number of issues regarding the

enforceabilty of the parties' agreement as set forth in the letter. Specifically, Judge Bolton found that Brown & Bain had not repudiated the agreement by withdrawing prior to the end of the litigation; that there was no failure of certain conditions precedents in the agreement; that Ethical Rule 1.5(e) did not render the agreement unenforceable; and that Brown & Bain had not forfeited its right to additional compensation. (Doc. 57) Judge Bolton, however, "expresse[d] no opinion on whether Brown & Bain is owed additional compensation under the terms of the Letter." (Doc. 57 p.14) It is that issue that must now be resolved.

## ANALYSIS

In its response to Brown & Bain's Motion for Summary Judgment, O'Quinn reargues a number of issues decided by Judge Bolton. The Court will briefly address these previously decided issues.

Recognizing that Judge Bolton's Order already addressed certain arguments, O'Quinn first asserts that "Judge Bolton's denial of O'Quinn's Motion for Summary Judgment does not constitute law of the case." (Doc. 126 p. 15) "Under the law of the case doctrine, 'a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case.'" Ingle v. Circuit City, 408 F.3d 592, 594 (9th Cir. 2005) (quoting United States v. Lummi Indian Tribe, 235 F.3d 443, 452 (9th Cir.2000)). O'Quinn cites Shouse v. Ljunggren, 792 F.2d 902, 904 (9th Cir. 1986), for the proposition that "the law of the case doctrine does not apply to pretrial rulings such as motions for summary judgment." In a later case, however, the Ninth Circuit observed that Shouse "overstates the rule." Federal Ins. Co. v. Scarsella Bros., Inc., 931 F.2d 599, 601 n.4 (1991). The correct understanding of the doctrine is that law of the case applies when the "court clearly intended to decide the issues at hand." Id. Here, Judge Bolton clearly intended to resolve the issues reargued by O'Quinn. The law of the case applies.

Anticipating a finding that the law of the case applies, O'Quinn next argues that it is always within the court's discretion whether to apply the doctrine. O'Quinn is correct that even when a previous ruling created law of the case, the doctrine "is not a limitation on a

tribunal's power, but rather a guide to discretion." United States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997). Thus, a court may depart from a previous ruling if certain circumstances exist, including: "(1) the first decision was clearly erroneous; (2) an intervening change in the law occurred; (3) the evidence on remand was substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result." Ingle v. Circuit City, 408 F.3d 592, 594 (9th Cir. 2005). O'Quinn argues that Judge Bolton's ruling was "clearly erroneous."

According to O'Quinn, Judge Bolton "failed to address pertinent facts" and "completely ignored" crucial information. (Doc. 26 p.16-17) The facts allegedly ignored by Judge Bolton, however, were cited by O'Quinn in its previous motions and at oral argument. The mere fact that Judge Bolton did not credit certain arguments when they were originally made does not mean that she ignored important evidence or that her ruling was "clearly erroneous." Having examined Judge Bolton's previous rulings and the arguments pressed by O'Quinn, the Court concludes that her rulings do not qualify as "clearly erroneous."

The Court determines that the doctrine of law of the case applies and O'Quinn's arguments already rejected by Judge Bolton need not be addressed again. Therefore, the only issue to be decided is whether O'Quinn can deduct costs not assessed against the McIntire plaintiffs such that no "recovery" occurred under the terms of the contract.

**I. Summary Judgment Standard**

Brown & Bain has moved for summary judgment on its claim for additional compensation. A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In addition, the dispute must be genuine, that is, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

Furthermore, the party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party; "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Id. at 255. Therefore, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor" at the summary judgment stage. Id.

**II. Controlling Substantive Law**

Judge Bolton previously recounted the reasons why Arizona law applies in this action. (Doc. 57) Neither party takes issue with that portion of her ruling. Accordingly, the present Motion for Partial Summary Judgment will also be analyzed under Arizona law.

**III. Additional Compensation**

According to the parties' agreement, Brown & Bain was due additional compensation if O'Quinn (and all associated counsel) recovered "an amount equal to the discount rate payments" paid to Brown & Bain. The parties agree that Brown & Bain was paid approximately 2.9 million dollars in "discount rate payments." Thus, if O'Quinn recovered more than 2.9 million, additional compensation is due Brown & Bain.

There is no dispute that approximately 26 million was received in the settlement with Motorola. From this amount the plaintiffs received 2.4 million and were charged 13.7 million in costs. This left 10.1 million. O'Quinn asserts that this 10.1 million was consumed in its entirety by other costs not passed on to the plaintiffs. These other costs, according to

O'Quinn, totaled more than 13 million. Thus, O'Quinn allegedly suffered a loss as a result of conducting the litigation. But Judge Bolton correctly found that "the precise issue is not whether O'Quinn made or lost money on the McIntire litigation, but whether there has been a recovery within the meaning of the Engagement Letter." (Doc. 57 p.14) According to Brown & Bain, it does not matter what O'Quinn did with the 10.1 million. Once that amount was "recovered," the contractual obligation to pay Brown & Bain was triggered.

The parties agree that the engagement letter constituted a contract. Under Arizona law, the goal in contract interpretation "is to effectuate the parties' intent, giving effect to the contract in its entirety." Tenet Healthsystem TGH, Inc. v. Silver, 52 P.3d 786, 788-89 (Ariz. Ct. App. 2002). To accomplish this goal, the contract should be "read in light of the parties' intentions as reflected by their language and in view of all circumstances." Harris v. Harris, 991 P.2d 262, 265 (Ariz. Ct. App. 1999). When, as here, the parties provide extrinsic evidence to prove a certain interpretation, a judge must "first consider[ ] the offered evidence and, if he or she finds that the contract language is 'reasonably susceptible' to the interpretation asserted by its proponent, the evidence is admissible to determine the meaning intended by the parties." Taylor v. State Farm Mut. Auto. Ins. Co., 854 P.2d 1134, 1140 (Ariz. 1993). Of course, "the judge need not waste much time if the asserted interpretation is unreasonable or the offered evidence is not persuasive. A proffered interpretation that is highly improbable . . . necessarily require[s] very convincing evidence." Id. at 1141. But even under this permissive rule, "[t]he question whether written language is 'reasonably susceptible' to the meaning asserted is a matter of law, not of fact." Long v. City of Glendale, 93 P.3d 519, 528 (Ariz. Ct. App. 2004).

The extrinsic evidence offered by O'Quinn attempts to establish that Brown & Bain was not to recover its additional payments before O'Quinn was made whole. According to an affidavit submitted by Carl D. Shaw, one of the O'Quinn attorneys, the parties discussed

the terms of the engagement letter in a number of meetings.[3] As a participant at those meetings, Shaw claims that the parties came to an agreement that Brown & Bain would receive its discount payments during the course of the litigation and any additional payments would not be made "until O'Quinn and the other plaintiffs' counsel were made whole." Mr. Shaw avers that "the intent of the parties [was] that the O'Quinn law firm would recover what it cost to properly pursue and resolve the litigation advanced by O'Quinn on behalf of all counsel and/or plaintiffs (including expenses passed on to the clients and those that were not passed onto the clients) prior to any bonus being paid to Brown & Bain or any other lawyers." (Emphasis in original.) Brown & Bain counters with an affidavit by Kim E. Williamson. Williamson states that Mr. Shaw was not present during the final negotiations of the agreement. Also, according to Williamson, the wording in the final agreement was meant to reflect that "O'Quinn's costs would be excluded from any calculation of Brown & Bain's . . . entitlement" to additional payments.

Having considered the evidence and carefully read the parties' agreement, the Court concludes the agreement's language is not reasonably susceptible to the interpretation urged by O'Quinn. As repeatedly recognized in Arizona cases, "one cannot claim that one is 'interpreting' a written clause with extrinsic evidence if the resulting 'interpretation' unavoidably changes the meaning of the writing." Long, 93 P.3d at 529. The interpretation offered by O'Quinn would introduce a whole new formula into the parties' agreement. The parties agreed that Brown & Bain would be entitled to additional funds if O'Quinn recovered more than 2.9 million, exclusive of costs assessed to the plaintiffs i.e., costs "which are to come from plaintiffs' share of the recovery." O'Quinn would have the Court read the agreement such that Brown & Bain would be entitled to additional payments only if O'Quinn recovered 2.9 million, exclusive of costs assessed to the plaintiffs *and* other costs incurred

---

[3] Brown & Bain has moved to strike this affidavit based on a lack of foundation. (Doc. 141) The Court has serious concerns about the admissibility of Shaw's testimony at trial. But the Court need not address the motion to strike because Brown & Bain is entitled to summary judgment even if the affidavit is considered.

- 8 -

by O'Quinn but not assessed to the plaintiffs.[4] This is inimical to the plain meaning of the agreement. The Court concludes that the interpretation offered by O'Quinn is "highly improbable" and O'Quinn's extrinsic evidence is not "very convincing." Taylor, 854 P.2d at 1141, 1144 (recognizing that sophisticated parties might be expected to use precise language). Thus, the Court is limited to the language of the contract and that language requires O'Quinn make the additional payments to Brown & Bain.[5]

**IV. Reasonableness**

O'Quinn argues that Ethical Rule 1.5 applies in this case. The version of that rule in effect at the time of the parties' agreement stated that "a division of a fee between lawyers who are not in the same firm may be made only if:"(1) the division is in proportion to the services performed by the lawyer or by written agreement with the client, each lawyer assumes joint responsibility for the representation; (2) the client is advised of and does not object to the participation of all the lawyers involved; and (3) the total fee is reasonable." ER 1.5(e) (1993). O'Quinn now argues that if the additional payments provision was triggered, Brown & Bain's fee would be unreasonable. (Response p. 19) O'Quinn submitted an affidavit by Geoffrey Hazard in support of this argument. In that affidavit, Hazard states that, in light of the circumstances of this case, the additional payments requested by Brown & Bain are unreasonable. But as recognized by Hazard in his treatise, The Law of

---

[4] As pointed out by Brown & Bain at oral argument, O'Quinn's reading of the agreement would effectively place the additional payments under the complete control of O'Quinn; the additional payments clause would only be triggered if O'Quinn did not classify the amount recovered as going to pay costs. This unilateral ability for O'Quinn to classify costs is not contained in the agreement.

[5] The Court's interpretation of the agreement is also supported by the agreements entered into between O'Quinn and the McIntire plaintiffs. A copy of one of those agreements provided by Brown & Bain as an exhibit to its Statement of Facts states that O'Quinn was entitled to "Forty percent (40%) of the total sums or fair market value of property collected or received from trial or settlement of [the plaintiff's] claims." (SOF Exhibit 5) The plaintiff, in turn, was entitled to "receive sixty percent (60%) of the total recovery or settlement, *less the costs and expenses of litigation . . . .*" (Emphasis added.) The costs and expenses of litigation were to be paid by the plaintiff out of his or her 60% share.

1  Lawyering, § 8.2 at 8-6 to 8-7 (3rd ed. Supp.), "lawyers are generally held to their contract
2  as between themselves, so long as the total fee paid by the client is not unreasonable." See
3  also Restatement (Third) of the Law Governing Lawyers § 34 comment b. (limitation on fees
4  being reasonable is due to courts' concern "to protect clients, particularly those who are
5  unsophisticated in matters of lawyers' compensation"). Judge Bolton previously stated that
6  any fees paid by O'Quinn to Brown and Bain had "absolutely no impact on the amount" the
7  plaintiffs in McIntire received from the litigation. (Doc. 57 p. 18) Thus, the "total fee" paid
8  by the McIntire plaintiffs is not changed by Brown & Bain receiving additional payments.
9  In these circumstances, Ethical Rule 1.5 does not apply and Brown & Bain is not prohibited
10 from recovering additional fees.

**V. Reimbursement of the Original Payments**

O'Quinn has asserted a counterclaim alleging that Brown & Bain's "discounted fees" paid between 1993 and 1998 were excessive and that O'Quinn is entitled to recoup those fees. Brown & Bain has moved for summary judgment on this claim. Because Arizona law does not allow O'Quinn to recover its earlier fees, the Court will also grant summary judgment regarding this issue.

Arizona's voluntary payment doctrine provides that "[e]xcept where otherwise provided by statute, a party cannot by direct action or by way of set-off or counterclaim recover money voluntarily paid with a full knowledge of all the facts, and without any fraud, duress, or extortion." Moody v. Lloyd's of London, 152 P.2d 951, 953 (Ariz. 1944) (quotation omitted). The Arizona Supreme Court stated the rationale behind this doctrine in Merrill v. Gordon, 140 P. 496 (Ariz. 1914). There the court held "that persons under no legal disability, as a general rule, have power to do as they wish with their own. They may enter into contracts; they may give away their substance; they may spend it for mere baubles; they may exchange it for high and riotous living; it may go to satisfy vanity or pride or ambition; and the courts are helpless to say nay or to control their freedom of action in those respects." Id. at 501. O'Quinn has lawyer's remorse and argues that the services performed by Brown

- 10 -

& Bain were, in effect, "mere baubles," providing trifling value to the underlying litigation. But O'Quinn's retrospective valuation of Brown & Bain's services is irrelevant here. O'Quinn freely paid Brown & Bain for those services and it would be improper for this Court to relieve O'Quinn from its decision and action. Also, O'Quinn believes that it did not have "full knowledge of all the facts" at the time the payments were made. Specifically, O'Quinn claims that it did not know that Brown & Bain might withdraw from the representation. But this Court has already ruled that the parties' contract allowed Brown & Bain to withdraw from the representation at any time. (Doc. 57) Thus, O'Quinn *did* have "full knowledge of all the facts" at the time the payments were made and cannot complain about those payments at this late date. For these reasons, the voluntary payment doctrine applies and O'Quinn may not recover the fees it has already paid to Brown & Bain.

**VI. Stay**

O'Quinn's next argument is that this Court should wait to rule in this case until a case in Maricopa County Superior Court concludes. That case involves one of the Motorola plaintiffs suing O'Quinn based on a breach of fiduciary duty. O'Quinn cites no case-law in support of its request for a stay. According to the Ninth Circuit, the granting of the type of stay requested by O'Quinn is "exceedingly rare." Smith v. Central Ariz. Water Conservation Dist., 418 F.3d 1028, 1033 (9th Cir. 2005). To issue a stay in this case, the Court would have to conclude that the "state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay . . . ." Id. (quotations omitted). In this case, there is, at the very least, a substantial doubt that the state court litigation will resolve the issues between Brown & Bain and O'Quinn. Even if the state court plaintiff is successful, O'Quinn may remain liable for the additional payments to Brown & Bain.[6] Therefore, O'Quinn's request for a stay of proceedings is rejected.

---

[6] Brown & Bain stated at oral argument that a recent ruling in the state court case limits the possible recovery of the state court plaintiff such that it is practically impossible that the state court outcome would impact this litigation.

- 11 -

## VI. Remaining Disputes

Having determined that Brown & Bain is entitled to the "additional payments" and that O'Quinn may not recover the fees it already paid, it appears that the only dispute left between the parties involves two small matters that Brown & Bain billed for, and O'Quinn paid for. (Doc. 107 p.14) Neither party addressed these matters in detail nor was summary judgment sought on them. The Court expresses no opinion on O'Quinn's obligations for these matters.

## VII. Motions to Strike

Brown & Bain filed a Motion to Strike two expert reports submitted by O'Quinn. Those expert reports relate to the validity of the fees already paid to Brown & Bain. Because O'Quinn can not challenge the fees already paid, the Motion to Strike need not be addressed. Similarly, Brown & Bain filed a Motion to Strike the Affidavit of Carl D. Shaw. Because Brown & Bain is entitled to summary judgment even if Mr. Shaw's affidavit is considered, the motion to strike will be denied as moot.

Accordingly,

IT IS ORDERED that Brown & Bain's Motion for Summary Judgment (Doc. 107) is GRANTED.

IT IS FURTHER ORDERED that Brown & Bain's Motions to Strike (Doc. 108, 141) are DENIED as moot.

IT IS FURTHER ORDERED that O'Quinn's Motion for Leave to File Surreply (Doc. 144) is DENIED as moot.

DATED this *February 22, 2006*.

Roslyn O. Silver
United States District Judge